UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARC ELLIOTT,

    Plaintiff,

v.                                                Case No. 8:10-cv-1976-T-24-TBM

GC SERVICES, LP,

    Defendant.
_____/

**ORDER**

        This cause comes before the Court on Defendant GC Services, LP's ("GCS") Motion for Summary Judgment (Doc. No. 45) as to claims against it for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72. Plaintiff, Marc Elliott, filed a response in opposition to the motion. (Doc. No. 50.) For the reasons stated herein, the motion is granted in part and denied in part.

**I.     Background**

        The following facts are undisputed: In July, 2009, Elliott purchased a heating and air conditioning system for his house from Sears for $7,900; he made the purchase with a Sears/Citibank card. GCS is a debt collector. On May 5, 2010, after Elliott stopped making payments on the Sears/Citibank card balance, GCS began collection efforts. In addition to its initial written communication with Elliott, GCS called Elliott numerous times and left a number of messages on Elliott's answering machine. The content and number of these calls and messages are in dispute and form the basis of Elliott's case.

On September 7, 2010, Elliott filed a six-count complaint against GCS alleging violations of the FDCPA and the FCCPA. Elliott seeks to recover actual damages, damages for his emotional and/or mental anguish, statutory damages of $1,000, and his attorneys' fees and costs.

## II.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.* Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1243 (11th Cir. 2001) (quotation omitted).

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affirmative evidence, designate specific facts showing there is a genuine issue for trial. *Porter*, 461 F.3d at 1320. In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## III.    Discussion

GCS makes a number of arguments in support of its motion for summary judgment. The

Court will address each argument below.

      A.      **Whether Elliott's Unpaid Account Balance Qualifies as a Consumer Debt under the FDCPA and the FCCPA**

GCS argues that the unpaid balance it tried to collect from Elliott does not fall within the statutory definition of a consumer debt under either the FDCPA or the FCCPA. The FDCPA and the FCCPA both define "debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5); Fla. Stat. § 559.55(1). GCS argues that Elliott's FDCPA and FCCPA claims fail because Elliott "is in the trades"[1] and did not pay sales tax on the purchase or installation of the central air unit he purchased, and in Florida all consumer retail purchases are subject to sales tax. GCS contends that this fact creates a presumption that the purchase is not an FDCPA or FCCPA consumer debt.

GCS offers no authority in support of this "presumption." Furthermore, Elliott states in his deposition that the heating and air conditioning system he purchased was installed in his home. (Doc. No. 51, Ex. 1, p. 8.) Because the property and services at issue were primarily for Elliott's personal or household purposes, GCS is not entitled to summary judgment on this basis.

      B.      **Violations of the FDCPA**

            1.      **Count I: 15 U.S.C. § 1692d(5)**

The FDCPA prohibits a debt collector from engaging in "any conduct the natural

---

[1] Elliott once worked as a plumber. (Doc. No. 46, Ex. 1, p. 4.)

3

consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Such harassing or abusive conduct prohibited by the FDCPA includes, but is not limited to: "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). The Court finds that there is a factual dispute as to the number of times GCS called Elliott, the content of those calls, and whether the calls were made with the intent to annoy, abuse, or harass.

Paul Grover, Vice-President of GCS's Client Management Group, states in a sworn declaration that GCS called Elliott 41 times over a two-month period, that 36 of its calls went unanswered, and that GCS left 12 voice messages. (Doc. No. 45, Ex. 1, p. 2.) He further states that, on one occasion, GCS called Elliott two times in a single day, but that it never called Elliott more than twice in a single day. (Doc. No. 45, Ex. 1, p. 2–3.) In addition, GCS never called Elliott back immediately after hanging up (Doc. No. 45, Ex. 1, p. 3), and Elliott admits that GCS never terminated a call and never used foul language (Doc. No. 46, Ex. 1, p. 5). Finally, Grover states that GCS called Elliott in order to reach a payment agreement, and not for purposes of annoying or harassing him. (Doc. No. 45, Ex. 1, p. 3.)

Elliott, however, testifies that there were "several times" in which he received more than one call from GCS in a single day, and sometimes the calls were within "two or three hours," and sometimes "two or three times in one day." (Doc. No. 51, Ex. 1, p. 12, 13, 20.) Elliott describes these calls as "harassing," and when asked to explain, he states that the caller would question him about his ability to take a vacation when he was not paying his bills, about his efforts to find a job, and about his ability to make payments on other accounts but not on the

4

Sears account.  (Doc. No. 51, Ex. 1, p. 9–10.)  Elliott also testifies that the calls were harassing by virtue of their repetitive nature and by the fact that, in each call, he was forced to explain his financial situation and inability to pay.  (Doc. No. 51, Ex. 1, p. 21–22.)

 Based on this evidence, genuine issues of material fact remain as to the number of times that GCS caused Elliott's telephone to ring, the content of the parties' communications, and whether GCS caused Elliott's telephone to ring repeatedly or continuously with the intent to annoy, abuse, or harass.  Accordingly, GCS is not entitled to summary judgment on this claim.

### 2. Counts II and IV:  15 U.S.C. §§ 1692d(6) and 1692e(11)

Section 1692d(6) prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity."  A debt collector violates § 1692e(11) by failing to disclose, in the initial written or oral communication with a consumer (1) that the debt collector is attempting to collect a debt; and (2) that any information obtained will be for purposes of collecting that debt.  *See generally* 15 U.S.C. § 1692e(11).  Further, a debt collector must disclose in subsequent communications with the consumer that the communication is from a debt collector.  *Id.*

Counts II and IV rest on the same factual allegations, specifically, that GCS did not disclose that it was a debt collector in phone calls and in messages left on Elliott's answering machine. GCS argues that Elliott has not produced any evidence to support these claims.

Elliott testified in his deposition that GCS failed to disclose its identity in some of the telephone calls.  (Doc. No. 51, Ex. 1, p.22.)  As such, he has shown that there is a factual issue as to whether GCS meaningfully disclosed its name or identity as a debt collector in its communications with Elliott.  Therefore, GCS's motion must be denied on these two claims.

### 3. Count III: 15 U.S.C. § 1692e(10)

Section 1692e(10) prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Elliott's claim under § 1692e(10) rests on the allegation that GCS's calls were deceptive in that Elliott's caller identification displayed an 800 number and the words "800 service" on two of GCS's incoming calls. Paul Grover states that "[GCS] did not instruct or request its telephone carrier or [Elliott's] telephone carrier to state '800 service' on [Elliott's] caller identification when [GCS] called [Elliott]." (Doc. No. 45, Ex. 1, p. 4.)

Elliott has offered no evidence to rebut Grover's testimony, nor has he offered evidence that the actual phone numbers displayed on Elliott's caller identification were in any way false. Because there is no evidence that GCS caused false or deceptive information to be displayed on Elliott's caller identification, GCS's motion for summary judgment is due to be granted on this claim. *See Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223, 1233–34 (D. Kan. 2011) ("Although plaintiff complains that her caller ID did not reveal [the defendant's] identity or name, there is no evidence that [the defendant] blocked this information or made any attempt to deceive her. In this case, the only information conveyed on plaintiff's caller ID display was [the defendant's] phone numbers, which were entirely accurate."); *Glover v. Client Servs., Inc.*, No. 07-cv-81, 2007 WL 2902209, at *3–4 (W.D. Mich. Oct. 2, 2007) (concluding that a display of the word "unavailable," instead of the defendant debt collector's name or phone number, on plaintiff's caller identification device was not false or deceptive).

### 4. Count V: 15 U.S.C. § 1692g(b)

Section 1692g of the FDCPA requires that a debt collector send a validation notice to the

debtor, informing the debtor that he or she has thirty days to dispute the debt and to request the name and address of the original creditor. *See generally* 15 U.S.C. § 1692g. This validation notice must not be overshadowed or contradicted by other messages from the debt collector. *See id.* The analysis of whether the language of a communication is deceptive under the FDCPA is determined according to whether the "least sophisticated consumer" would have been misled. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985).

Grover states that GCS's initial validation letter to Elliott contained the full disclosures required by § 1692g(a), and that GCS did not threaten Elliott with "further action" or negative credit reporting. (Doc. No. 45, Ex. 1, p. 2, 4.) Elliott testified that the validation notice was overshadowed by other communications from GCS. Specifically, he testified that during the 30-day notice period, he received calls from GCS in which he was told that he needed to make payment or GCS would proceed with putting a lien on his house. (Doc. No. 51, Ex. 1, p. 28.) Elliott also indicated that GCS threatened him with reporting him to a credit bureau within 30 days of his receipt of GCS's initial letter. (Doc. No. 51, Ex. 1, p. 29.) GCS maintains that these statements were never made. (Doc. No. 45, Ex. 1, p. 4.) Because a factual dispute remains as to whether or not GCS made these communications, and whether they overshadowed the initial validation letter, GCS is not entitled to summary judgment on this claim.

      C.      **Violation of the FCCPA — Count VI: Fla. Stat. § 559.72(7)**

Section 559.72(7) of the FCCPA prohibits any person, in collecting consumer debts, to "[w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any

member of her or his family."

GCS notes that Elliott has not alleged any factual allegations specific to this claim, but instead has relied on the arguments that support his § 1692d(5) claim, on which GCS contends it is entitled to summary judgment. GCS argues that, under the FCCPA, debt collectors are permitted to inform or remind the consumer about the unpaid, outstanding account balance; to determine reasons for nonpayment; and to negotiate differences or to persuade payment of the balance without litigation. GCS contends that there is no evidence that GCS's conduct violated the FCCPA.

As discussed above, in the context of Elliott's claim under § 1692d(5) of the FDCPA, Elliott testified that there were "several times" in which he received more than one call from GCS in a single day, sometimes receiving calls within "two or three hours," and sometimes calls "two or three times in one day." (Doc. No. 51, Ex. 1, p. 12, 13, 20.) Elliott described these calls as "harassing," and when asked to explain, he testified that the caller would question him about his ability to take a vacation when he was not paying his bills, about his efforts to find a job, and about his ability to make payments on other accounts but not on the Sears account. (Doc. No. 51, Ex. 1, p. 9–10.) Elliott also testified that the calls were harassing by virtue of their repetitive nature and the fact that, in each call, he was forced to explain his financial situation and inability to pay. (Doc. No. 51, Ex. 1, p. 21–22.) Because factual disputes remain as to the number of times that GCS caused Elliott's telephone to ring, the content of the parties' communications, and whether GCS caused Elliott's telephone to ring repeatedly or continuously with the intent to abuse or harass, summary judgment is inappropriate on this claim.

8

### D.   Elliott's Claims for Actual Damages and Damages for Emotional and/or Mental Anguish

A debt collector found in violation of the FDCPA shall be liable to the consumer for actual damages sustained as a result of the violation, statutory damages not to exceed $1,000, and attorneys' fees and costs for bringing a successful action to enforce liability. 15 U.S.C. § 1692k(a). The same damages are available under the FCCPA. Fla. Stat. § 559.77(2).

GCS argues that Elliott has not produced evidence to support his demand for actual damages, and the claim for actual damages and damages for emotional and/or mental anguish should be dismissed. As to the FDCPA, GCS argues that actual damages are intended only for extreme and outrageous conduct that has a severe impact. As to the FCCPA, GCS argues that there can be no recover for actual damages unless there is a deliberate and calculated act performed with the intent of producing injury.

Elliott testified that he has seen a psychiatrist twice for employment, financial, and marital problems, but not for his situation with GCS. (Doc. No. 46, Ex. 1, p. 17, 20.) In fact, he testified that he did not discuss GCS with his doctor. (Doc. No. 46, Ex. 1, p. 20.) Elliott also testified that he was not seeking to recover damages for the psychological concerns he discussed with his psychiatrist. (Doc. No. 46, Ex. 1, p. 17.) Elliott testified that he was being medicated for anxiety and sleep disorders based on his "overall circumstances," and that the stress increased with GCS's calls. (Doc. No. 51, Ex. 1, p. 25.)

"Compensation for emotional distress is considered a form of actual damages under the FDCPA." *Montgomery v. Fla. First Fin. Grp., Inc.*, No. 06-cv-1639, 2008 WL 3540374, at *8 (M.D. Fla. Aug. 12, 2008). In this context, "state law requirements that must be proven to establish negligent or intentional infliction of emotional distress are inapplicable." *McLean v.*

*GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) (quoting *In re Maxwell*, 281 B.R. 101, 118 (Bankr. D. Mass. 2002)).

Elliott did not seek medical help based on GCS's conduct. Although he was seeing a psychiatrist for other reasons, Elliott did not discuss GCS's conduct with that doctor. Furthermore, Elliott has presented no competent evidence that GCS's calls caused additional medical problems or exacerbated his pre-existing anxiety and sleep issues. Thus, Elliott's claim rests on his own conclusory testimony that his "stress got more tense" when GCS called. (Doc. No. 51, Ex. 1, p. 25.) The Court finds that this factual record is insufficient to defeat GCS's motion for summary judgment as to Elliott's claims for actual damages and damages for emotional and/or mental anguish; therefore, GCS's motion is granted as to these claims.

## IV.   Conclusion

In conclusion, the Court finds that genuine issues of material fact remain regarding whether the telephone calls that GCS made in an effort to collect the debt owed by Elliott violated §§ 1692d(5), 1692d(6), 1692e(11), and 1692g(b) of the FDCPA and § 559.72(7) of the FCCPA. However, the Court finds that GCS is entitled to summary judgment on Elliott's claim that it violated 15 U.S.C. § 1692e(10) by virtue of the manner in which its phone numbers appeared on Elliott's caller identification device. Furthermore, the Court finds that Elliott is not entitled to actual damages or damages related to emotional and/or mental anguish. Accordingly, it is ORDERED AND ADJUDGED that GCS's Motion for Summary Judgment (Doc. 45) is:

(1) **DENIED** as to Count I;

(2) **DENIED** as to Count II;

(3) **GRANTED** as to Count III;

10

(4) **DENIED** as to Count IV;

(5) **DENIED** as to Count V;

(6) **DENIED** as to Count VI; and

(7) **GRANTED** as to Elliott's claims for actual damages and damages related to emotional and/or mental anguish.

Finally, GCS's Motion for Leave to File a Reply Brief (Doc. No. 52) is **DENIED as moot**.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of November, 2011.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record